RODRICKAS A. ALLEN,

          Petitioner,

vs.                           Case No. 3:15-cv-1378-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

          Respondents.

_____

## ORDER

## I.  INTRODUCTION

Petitioner Rodrickas A. Allen initiated this case by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. 1) raising fifteen grounds.  Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 16).[1]  Before filing a reply, Petitioner filed a Motion to Hold in Abeyance (Motion) (Doc. 21).  He then filed his Reply to Respondents' Response to Order to Show Cause (Reply) (Doc. 22).

In his Motion, Petitioner complained the state circuit court failed to address two grounds raised in the Rule 3.850 motion and

---

[1] The Court hereinafter refers to the Exhibits (Docs. 16 & 31) as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the particular document will be referenced.

supplemental post conviction claims: grounds six and sixteen. The state court did not specifically address ground six of the post conviction motion and ground sixteen of the supplemental claims. Order (Doc. 27 at 1). Petitioner asked that he be granted a stay and abeyance so he could return to the state courts and obtain a ruling on these grounds. This Court granted the Motion and directed Petitioner to move to reopen the case upon completion of the exhaustion of his state court remedies. Order (Doc. 27 at 2).

Petitioner moved to reopen the case (Doc. 29). The Court directed the Clerk to reopen the case and directed Respondents to file a supplemental response and allowed Petitioner to file a supplemental reply. Order (Doc. 30). Respondents filed a Supplemental Answer in Response to Order to Show Cause (Supplemental Response) (Doc. 31) and Petitioner filed his Reply to Respondents' Response to Order to Show Cause Order (Supplemental Reply) (Doc. 32).

After seeking an abeyance to return to the state circuit court to exhaust his remedies on two grounds, and after obtaining a stay and abeyance from this Court, Petitioner moved to dismiss his Successive Motion for Postconviction Relief on August 2, 2018 (Doc. 21-1). Ex. X. The circuit court granted the motion to dismiss. Ex. Y.

## II.  CLAIMS

Petitioner raises fifteen grounds in his Petition.  He has not sought leave to amend his Petition to add any additional claims, and based on Petitioner's actions in the state circuit court and this Court, he does not intend to pursue ground sixteen of his state supplemental claims.[2]

The fifteen grounds are: (1) the ineffective assistance of counsel for failure to object to testimony that had been excluded by the state's motion in limine; (2) the ineffective assistance of counsel for failure to object to the prosecutor's improper use of "circumstantial/hearsay" [Petitioner's statement: "I'm sorry", referenced in the state's opening statement and closing arguments]; (3) the ineffective assistance of counsel for failure to properly move for a motion for judgment of acquittal/mistrial; (4) a claim of fundamental error based on the trial court's failure to properly instruct the jury on the burden of proof; (5) a claim of fundamental error based on the trial court's failure to give adequate jury instructions, omitting an instruction that the offense Petitioner intended to commit was theft; (6) the

---

[2] The sixteenth claim raised in Petitioner's Supplemental Post Conviction Claims is a claim of ineffective assistance of counsel for failure to argue that the weight of the evidence was contrary to law.  Ex. P at 14-15.  Petitioner did not present this ground in the Petition (Doc. 1).  Thus, the Court will not address it. Alternatively, it is due to be denied.  The record shows the evidence was not contrary to the verdict or the law.  <u>See</u> Supplemental Response at 9-10.

ineffective assistance of counsel for failure to request special jury instructions for possession of stolen property; (7) a claim of fundamental error based on the trial court giving jury instructions with missing elements; (8) the ineffective assistance of counsel for failure to investigate the ownership of the burglarized property; (9) the ineffective assistance of counsel for failure to object to the jury instructions or move for a mistrial; (10) the ineffective assistance of counsel for failure to properly impeach the state's witness, Officer Muse; (11) the ineffective assistance of counsel for failure to ask for a continuance; (12) the ineffective assistance of counsel for failure to object to Officer Muse's testimony regarding his observations during the chase; (13) the ineffective assistance of counsel for failure to impeach Officer's Muse's testimony about the bag; (14) the ineffective assistance of counsel for failure to present argument as to why Officer Muse failed to write a police report; and (15) the ineffective assistance of counsel for failure to ask Officer Alwin about the bag.

Petitioner in his Reply concedes that grounds four, five, and seven should have been raised on direct appeal. Reply at 10. Thus, the Court will not address grounds four, five, and seven of the Petition as Petitioner has conceded these grounds. In his Reply, Petitioner also submits that grounds eight and nine are

meritless, and he drops these grounds as fruitless.[3]  Reply at 13.

Consequently, the remaining grounds to be addressed are grounds

one, two, three, six, ten, eleven, twelve, thirteen, fourteen, and

fifteen.[4]

### III.  EVIDENTIARY HEARING

The pertinent facts are fully developed in this record or the

record otherwise precludes habeas relief; therefore, the Court is

able to "adequately assess [Petitioner's] claim[s] without further

factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th

Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  As the record

refutes the asserted factual allegations or otherwise precludes

habeas relief, Petitioner is not entitled to an evidentiary

---

[3] In his Supplemental Reply, Petitioner states his
supplemental claim sixteen was addressed and he mis-read the
record, and it was actually ground nine that was not properly ruled
upon.  However, based on the record, the trial court did not
specifically address supplemental claim sixteen.  Moreover,
Petitioner did not present supplemental claim sixteen in his
federal Petition.  The trial court did address ground nine of the
Rule 3.850 motion, and the court rejected this claim, finding
Petitioner failed to show counsel's performance outside the wide
range of reasonable professional assistance as any objection to the
instructions or motion for mistrial would have been fruitless.  Id.
at 21-23.  Furthermore, the court found no error in the
instructions.  Id. at 23.

[4] Even assuming grounds four, five, seven, eight, and nine are
properly before the Court, Petitioner is not entitled to habeas
relief on these grounds.  The trial court denied the post
conviction motion and supplemental claims, and the First District
Court of Appeal (1st DCA) affirmed.  Ex. P at 21-24; Ex. S.  The
Court finds AEDPA deference is warranted.  The decision of the 1st
DCA is not contrary to or an unreasonable application of Supreme
Court precedent, or based on an unreasonable determination of the
facts.

hearing.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).  He has

not met his burden demonstrating a need for an evidentiary hearing.

<u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th

Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012).

### IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA)

governs a state prisoner's federal petition for habeas corpus.  <u>See</u>

28 U.S.C. § 2254.  This statute "imposes important limitations on

the power of federal courts to overturn the judgments of state

courts in criminal cases."  <u>Shoop v. Hill</u>, No. 18-56, 2019 WL

113038, at * 2 (U.S. Jan. 7, 2019) (per curiam).  Significantly,

the statute "respects the authority and ability of state courts and

their dedication to the protection of constitutional rights."  <u>Id</u>.

In this regard, "[u]nder AEDPA, error is not enough; even clear

error is not enough."  <u>Meders v. Warden, Ga. Diagnostic Prison</u>,

Nos. 14-14178; 15-14734, 2019 WL 101161, at *10 (11th Cir. Jan. 4,

2019) (citing <u>Virginia v. LeBlanc</u>, 137 S.Ct. 1726, 1728 (2017) (per

curiam)).

Applying the statute as amended by AEDPA, federal courts may

grant habeas relief:

> only when the adjudication of a federal
> constitutional claim "on the merits in State
> court proceedings" either "resulted in a
> decision that was contrary to, or involved an
> unreasonable    application    of,    clearly
> established Federal law, as determined by the
> Supreme  Court  of  the  United  States"  or
> "resulted in a decision that was based on an
> unreasonable  determination  of  the  facts  in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This narrow evaluation is highly deferential, for a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Morrow v. Warden</u>, 886 F.3d 1138, 1146–47 (11th Cir. 2018) (alteration adopted) (internal quotation marks omitted) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). The decision of a state court is "contrary to" federal law only if it "contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." <u>Cummings v. Sec'y for Dep't of Corr.</u>, 588 F.3d 1331, 1355 (11th Cir. 2009) (citation and internal quotation marks omitted). The decision of a state court "involves an unreasonable application of federal law if it identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply." <u>Id</u>. (citation and internal quotation marks omitted). "The question ... is not whether a federal court believes the state court's determination was correct but whether that determination was unreasonable—a substantially higher threshold." <u>Id</u>. (citation and internal quotation marks omitted).

<u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 898 F.3d 1314, 1321 (11th Cir. 2018).

A district court is charged with reviewing the conclusions of the state court, deferring to the state court decisions, and granting habeas relief only if the adjudication of the claim resulted in a decision that was contrary to, or involved an

unreasonable application of Supreme Court precedent. "Clear error will not suffice." Virginia v. LeBlanc, 137 S.Ct. at 1728. This formidable barrier to habeas relief is very difficult to overcome as highly deferential AEDPA deference is due, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. Therefore, if some fairminded jurists could agree with the lower court's decision, habeas relief must be denied. Meders, 2019 WL 101161, at *10.

Of note, AEDPA deference is not based on the "specificity or thoroughness" of the decision; indeed, the "no-grading-papers, anti-flyspecking rule remains the law of the circuit." Meders, 2019 WL 101161, at *12. Thus, in its review, a district court is not obliged to "flyspeck the state court order or grade it." Wilson v. Warden, Ga. Diagnostic Prison, 898 F.3d at 1345. Also of note, AEDPA deference is given even if no rationale or reasoning is provided. Meders, 2019 WL 101161, at *12 (citing Harrington v. Richter, 562 U.S. 86, 100 (2011)).

In its review, the district court should afford a presumption of correctness to state trial and appellate courts' factual determinations. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013). In this regard, "the petitioner 'ha[s] the burden of rebutting the

presumption of correctness by clear and convincing evidence.' 28
U.S.C. § 2254(e)(1)." <u>Morrow v. Warden</u>, 886 F.3d 1138, 1147 (11th
Cir. 2018), <u>petition for cert. filed</u>, (U.S. Oct. 19, 2018) (No. 18-
6409).

In employing AEDPA review:

> "Deciding whether a state court's
> decision 'involved' an unreasonable
> application of federal law or 'was based on'
> an unreasonable determination of fact requires
> the federal habeas court to 'train its
> attention on the particular reasons—both legal
> and factual—why state courts rejected a state
> prisoner's federal claims.'" <u>Wilson v.
> Sellers</u>, --- U.S. ----, 138 S.Ct. 1188,
> 1191-92, --- L.Ed.2d ---- (2018) (quoting
> <u>Hittson v. Chatman</u>, --- U.S. ----, 135 S.Ct.
> 2126, 2126, 192 L.Ed.2d 887 (2015) (Ginsberg,
> J., concurring in denial of certiorari) ). The
> Supreme Court recently held that, when the
> relevant state court decision is not
> accompanied by a reasoned opinion explaining
> why relief was denied, "the federal court
> should 'look through' the unexplained decision
> to the last related state-court decision that
> does provide a relevant rationale" and
> "presume that the unexplained decision adopted
> the same reasoning." <u>Id</u>. at 1192. "[T]he State
> may rebut the presumption by showing that the
> unexplained affirmance relied or most likely
> did rely on different grounds than the lower
> state court's decision." <u>Id</u>.

<u>Johnson v. Sec'y, Dep't of Corr.</u>, 737 F. App'x 438, 441 (11th Cir.
2018) (per curiam).

If the last state court to decide a federal claim provides an
explanation for its merits-based decision in a reasoned opinion,
the district court simply reviews the specific reasons given by the
state court and defers to those reasons, if they are reasonable.
But, if no explanation is provided, for example, the opinion simply

states affirmed or denied, the district court should "look through" the unexplained decision to the last related state-court decision that provides relevant rationale.[5] The district court presumes the unexplained decision adopted the same reasoning as the lower court, however, this presumption is not irrebutable, as strong evidence may refute it. <u>See</u> <u>Kernan v. Hinojosa</u>, 136 S.Ct. 1603, 1606 (2016) (per curiam). In an effort to rebut the presumption, the state may attempt to show the higher state court relied or most likely relied on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." <u>Wilson v. Sellers</u>, 138 S.Ct. 1188, 1192 (2018) (Wilson).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). <u>See</u> <u>Brewster v. Hetzel</u>, No. 16-16350, 2019 WL 272835, at *6 (11th Cir. Jan. 22, 2019) (stating reviewing court may begin with either of the components).

---

[5] In this case, the 1st DCA affirmed on the basis of the trial court's order; therefore, <u>Wilson</u> requires that this Court look through the 1st DCA's decisions to the trial court's opinion.

"For a third of a century[,]" a counsel's performance has been considered deficient only if counsel's performance is outside the wide range of professionally competent assistance. <u>Meders</u>, 2019 WL 101161, at *10. In order to obtain habeas relief, a counsel's errors must be so great that they actually adversely effect the defense. In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2126 (2015); <u>Knowles v. Mirzayance</u>, 556 U.S. 111,

123 (2009). Thus, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004), cert. denied, 544 U.S. 982 (2005). As a result, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In his first ground for habeas relief, Petitioner raises a claim of ineffective assistance of counsel for failure to object to testimony that had been excluded as a result of the state's motion in limine. Petition at 4. Petitioner raised a comparable claim in his Rule 3.850 motion in ground one. Ex. R at 7-8. The trial court denied relief. Ex. P at 19-20. The 1st DCA affirmed per curiam. Ex. S.

In ground one, Petitioner claims information from a witness provided to Officer Muse was used to bolster the state's case although this information should have been excluded pursuant to the state's motion in limine. Petition at 4. This claim is due to be denied.

Factually the claim is inaccurate; the motion in limine in question was not filed by the state. The defense filed the motion. Ex. A at 73. In the motion, the defense asked the trial court to

prohibit the state from introducing evidence relating to or testimony of the testimonial hearsay statements of Sedrick Knight, identifying Petitioner to the police following Knight's 911 call. Id. The trial court granted the motion. Id.

What Petitioner claims happened at trial never occurred. Petitioner states there was "testimony that the person who made the 911 call was the same person who allegedly observed Defendant walking through the yard of the burglarized resident [sic] just before hearing a window being broken, moments afterwards." Ex. R at 7. Petitioner contends this "damning testimony" should have been excluded. Id.

The record belies Petitioner's contention. The 911 caller was never identified at trial. In fact, during deliberation, the jury asked the question "[w]ho made the 911 call?" Ex. B at 189. The court informed the jury that the answer to that question was not in the evidence in the case. Id. Upon review of the record, there was no violation of the court's ruling on the motion in limine. As such, Petitioner is not entitled to relief on ground one.

Alternatively, after due consideration, this Court concludes Petitioner is unable to establish that the state court decision denying this ground was contrary to or an unreasonable application of federal law. Additionally, this Court presumes the factual determinations are correct, 28 U.S.C. § 2254(e)(1), and simply asks whether the determination was unreasonable.

In denying relief, the trial court found the 911 caller was never identified at trial as the same witness who identified Petitioner. Ex. P at 19. The court also rejected Petitioner's contention the state violated the trial court's ruling on the motion in limine. Id. at 19-20. Notably, the court recognized the two-pronged Strickland standard of review for the claims of ineffective assistance of counsel. Ex. P at 18-19. Finally, the trial court held defense counsel cannot be found ineffective for failure to object to a non-meritorious matter such as this. Id. at 20.

The 1st DCA affirmed the decision of the trial court without opinion. Ex. S. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The state court's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. As such, ground one is due to be denied.

## B. Ground Two

In his second ground for habeas relief, Petitioner raises a claim of the ineffective assistance of counsel for failure to

object to the prosecutor's improper use of "circumstantial/hearsay" [Petitioner's statement: "I'm sorry", referenced in the state's opening statement and closing arguments]. Petition at 5. This Court will not grade or parse the trial court's decision in rejecting this claim. In denying ground two of the Rule 3.850 motion, the trial court held:

> Defendant's claim must fail because he testified during cross examination that he did apologize to the victim, Ms. Bridgett [sic] Kendall. (Ex. D, p. 135). Moreover, numerous officers testified that Defendant spontaneously asked police if he could apologize to the victim first before he was Mirandized and arrested and Defendant's apology to the victim was heard by some of the officers. (Ex. D, pp. 54, 60, 86). Defendant's claim fails as such a statement is admissible; evidence of a defendant's acts or statements calculated to defeat or avoid prosecution is admissible against him as showing consciousness of guilt. Brown v. State, 391 So.2d 729, 730 (Fla. 3d DCA 1980); Walker v. State, 495 So.2d 1240, 1241 (Fla. 5th DCA 1986). Therefore Defendant fails to show that his counsel's performance was outside the wide range of reasonable professional assistance. Strickland; Lugo. Thus, Defendant's Ground Two is denied.

Ex. P at 20-21. The 1st DCA affirmed. Ex. S.

Although the trial court found the statements were admissible as showing consciousness of guilt, the Petitioner's apology is more accurately described as just that, an apology. In Sutton v. State, 909 So.2d 292, 295-96 (Fla. 3d DCA 2004) (per curiam), the court deemed the admission of a letter including an apology ("I'm sorry), to be harmless error, particularly when defense counsel argued the

apology was that the victim suffered an unfortunate act, and the defendant was sorry "as a human being." <u>Id</u>. at 296.

Very similar circumstances occurred in Petitioner's trial. Testimony revealed Petitioner apologized to the victim, without confessing the commission of the crime of burglary. The state referenced the apology in opening statement and closing arguments. During both opening and closing statements, defense counsel explained Petitioner's reason for his apology.

During opening statement, defense counsel addressed the substance of Petitioner's apology:

> So after Mr. Allen fled into the woods, police officers coming down the street in response to the 911 call and the BOLO that was put out, they recognize him, they stop him, they take him into custody, bring him back to the house, explained to him what had happened, that a burglary had taken place, this was the place. At that point in time the light bulb kind of goes off in his head, oh, oh, I bet that stuff was just stolen from this house.
>
> That is when he said, "I need to tell that woman I'm sorry," not because he was sorry for breaking into her house, not because he was sorry for stealing her stuff, but because he was sorry that it had happened to her and he was sorry that the stuff that he had in his possession was the stuff that came from her house.

Ex. B at 24-25.

During closing argument, defense counsel argued:

> Prosecutors have made a big deal about his apology to the victim of the burglary in this case. It is common practice that when you see somebody that has had something bad happen to them that you say you're sorry. When somebody dies and you apologize for their

loss and you say I'm sorry, you're not
confessing because you have killed them.
You're saying you're sorry because something
bad happened to them and because you feel bad
for them.

If Mr. Allen wanted to confess, if he
wanted to say I'm sorry for breaking into your
house, he could have said I'm sorry for
breaking into your house. He didn't say that.
All five officers -- four officers who came up
there and testified about his statements,
including the victim herself, he didn't say
I'm sorry for breaking into your house. He
said I'm sorry, I apologize.

And he said that only after he was
arrested and told what he was accused of
doing. When he realized, oh, oh, the stuff
that I just traded for that dope belonged to
somebody else and was just stolen, he realized
it, the light bulb went off in his head, oh,
oh, we screwed up. That is a plausible
explanation. That makes sense.

Id. at 164-65.

Petitioner's defense was that he had not burglarized the
victim's house, but he had traded crack to Zebulon for the victim's
property, and the trade was made without Petitioner having any
knowledge that the property was stolen from the victim's house.
Id. at 22-23. Petitioner attested to this. Id. at 123-26. Under
these circumstances, even if there was error in the admission of
testimony by the officers and the victim concerning the apology, it
was harmless. As such, Petitioner has failed to demonstrate
prejudice. As Petitioner has failed to satisfy the prejudice prong
of Strickland, the Court need not address the deficiency prong.
Brewster v. Hetzel, 2019 WL 272835, at *6 (citation and quotation
omitted).

Alternatively, the state court's decision is entitled to AEDPA deference. As noted by the trial court, Petitioner's claim must fail because he took the stand and testified that he apologized to the victim. Ex. P at 20. On cross examination, the prosecutor asked Petitioner what he said to Ms. Kendall. Ex. B at 135. Petitioner responded that he told her, "I apologize." Id. The trial court found, under these circumstances, defense counsel's performance was within the wide range of reasonably competent assistance. Ex. P at 20-21.

As evidenced by opening statement, the defense strategy was not to deny the apology, but to admit to the apology while explaining Petitioner did not burglarize the home, but simply traded drugs to Zebulon for items taken from the home, without Petitioner knowing the source of those items. In closing, defense counsel argued the defense had provided a plausible explanation for Petitioner being in the area and in possession of the victim's property, and for apologizing to the victim.

Petitioner is unable to establish the state court decision denying this ground was contrary to or an unreasonable application of federal law. The record demonstrates the trial court found no deficient performance on the part of counsel. Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to

the last adjudication on the merits provided by the 1st DCA.  Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.  As such, ground two is due to be denied.

### C.  Ground Three

In his third ground for post conviction relief, Petitioner raises a claim of ineffective assistance of counsel for failure to properly move for a motion for judgment of acquittal/mistrial.  Petition at 6.  Petitioner presented a comparable claim in ground three of his Rule 3.850 motion.  Ex. R at 11-13.  The trial court denied this claim of ineffective assistance of counsel.  Ex. P at 21.  The 1st DCA affirmed.  Ex. S.

The record demonstrates the following.  After the state rested, defense counsel moved for a judgment of acquittal.  Ex. B at 117.  He stated the evidence was "completely circumstantial in nature."  <u>Id</u>.  He argued there was an absence of witnesses or other evidence linking Petitioner to the crime of burglary.  <u>Id</u>. at 117-18.  He noted the state failed to present witnesses of the actual events constituting burglary.  <u>Id</u>. at 118.  Defense counsel also urged the court to grant the motion based on the fact that there were explanations for Petitioner's conduct, and the evidence presented did not fit the state's theory of the crime.  <u>Id</u>.

Finally, counsel urged the court to grant the motion because the state had not disproved Petitioner's "innocent explanations[.]" Id. The trial court denied the motion. Id.

After the defense rested, defense counsel renewed the motion for a judgment of acquittal based on the state's case being based solely on circumstantial evidence. Id. at 146-47. Defense counsel argued the defense had presented a reasonable or plausible hypothesis of innocence, left unrebutted by the state. Id. at 147. The trial court denied the renewed motion. Id.

With respect to the claim that defense counsel's performance was rendered deficient for failing to file a motion for mistrial, the Court concludes defense counsel was not ineffective for failing to move for a mistrial as there was no basis for such a motion. "Defense counsel, of course, need not make meritless motions or lodge futile objections." Brewster v. Hetzel, 2019 WL 272835, at *10 (citing Meders, 900 F.3d at 1349). To the extent Petitioner is claiming that counsel failed to properly move for a judgment of acquittal, the record demonstrates otherwise. Defense counsel sufficiently moved for a judgment of acquittal at the close of the state's case and at the close of the defense's case. Defense counsel adequately supported his motion with valid and thoughtful argument based on the theory of the defense.

To the extent Petitioner is asserting counsel's performance was constitutionally deficient because counsel did not include an argument attacking the state's failure to prove the essential

elements of the crime of burglary, Petitioner has not established that no competent counsel would have taken the action that counsel did take. The failure to include the argument concerning elements of the crime in the motion for judgment of acquittal did not take counsel's performance outside the wide range of professionally competent assistance. <u>Id</u>. at *11. Indeed, in this instance, defense counsel presented other valid argument to support the motion for judgment of acquittal. In light of the above, Petitioner is not entitled to habeas relief.

In the alternative, AEDPA deference is warranted. The trial court found that even though defense counsel "did not phrase the argument exactly as Defendant posits in his Motion, the argument in support of both motions for judgment of acquittal were sufficient." Ex. P at 21. Moreover, the trial court determined Petitioner failed to prove the two-pronged <u>Strickland</u> test. <u>Id</u>. The 1st DCA affirmed the decision of the trial court. Ex. S. Pursuant to <u>Wilson</u>, this Court assumes the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The adjudication of the state court, the 1st DCA, resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground

three because the state court's decision was not contrary to clearly established federal law, <u>Strickland</u> and its progeny, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Ground three is due to be denied.

## D. Ground Six

In his sixth ground for habeas relief, Petitioner raises a claim of ineffective assistance of counsel for failure to request special jury instructions for possession of stolen property. Petition at 9. He raised this claim in ground six of his Rule 3.850 motion. Ex. R at 16-17. Petitioner urged the trial court to find his counsel's performance deficient for not requesting an instruction for possession of stolen property. <u>Id</u>. at 16. Although the trial court did not specifically address this claim, it denied post conviction relief. Ex. P at 28. The 1st DCA affirmed the decision of the trial court. Ex. S. Petitioner moved for rehearing and noted the trial court's failure to "rule on it at all." Ex. T. The 1st DCA denied rehearing. Ex. U. The mandate issued on October 28, 2014. Ex. V.

Assuming this claim was rejected through the general denial of the post conviction motion, the Court finds AEDPA deference is warranted as the 1st DCA affirmed the decision of the trial court. The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore,

Petitioner is not entitled to relief on ground six because the state court's decision was not contrary to clearly established federal law, <u>Strickland</u> and its progeny, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

In the alternative, the Court finds Petitioner is not entitled to habeas relief on ground six. In the information, Petitioner was charged with burglary of a dwelling. It charged: Petitioner, on April 4, 2009, unlawfully entered or remained in Bridgette Kendall's dwelling, with the intent to commit the offense of theft. Ex. A at 12. The court instructed the jury as to the offenses of burglary and the lesser-included crime of trespass. Ex. B at 174-178. No other lesser-included offenses were requested by either the state or the defense. <u>Id</u>. at 147-150.

Defense counsel's performance was not deficient for failing to request a jury instruction concerning possession of property recently stolen. As noted by the Supreme Court of Florida,

> In Florida, there are two standard jury instructions on possession of property recently stolen. One involves burglary, and the other involves theft. The burglary instruction was given in this case. It states:
>
>> Proof of unexplained possession by an accused of property recently stolen by means of a burglary may justify a conviction of burglary with intent to steal that property if the circumstances of the burglary and of the possession of the stolen property, when considered in light of all evidence in the case,

> convince you beyond a reasonable
> doubt that the defendant committed
> the burglary.

Fla. Std. Jury Instr. (Crim.) 13.1 at 250.
Walker v. State, 896 So.2d 712, 714 (Fla. 2005).

Although the use of jury instructions on possession of recently stolen property are generally approved and not considered an impermissible comment on the evidence, this type of instruction impresses "an inference of guilty knowledge" from the fact of possession. Barnes v. United States, 412 U.S. 837, 843 (1973). See Walker, 896 So.2d at 717 (quoting State v. Young, 217 So.2d 567, 570-71 (Fla. 1968)) (finding it "a rule relating to circumstantial evidence from which the jury has the right to infer guilt of larceny or of breaking and entering with intent to steal"). Therefore, defense counsel cannot be considered deficient for failing to request this type of instruction, as "unexplained or unsatisfactorily explained possession of property recently stolen permits an inference that the possessor is the person who stole it[.]" Id. at 718 (citing White v. United States, 300 A.2d 716, 718 (D.C. 1973)).

Based on the evidence and testimony presented at trial, defense counsel's failure to request a jury instruction that would likely burden Petitioner with an inference of guilty knowledge is reasonably effective assistance. Moreover, Petitioner has not demonstrated prejudice. Therefore, he has failed to satisfy the

two-pronged standard under <u>Strickland</u>.  Petitioner is not entitled
to habeas relief on this claim.

### E.  Ground Ten

In his tenth ground, Petitioner claims the ineffective
assistance of counsel for failure to properly impeach the state's
witness, Officer Muse.  Petition at 13.  Petitioner raised a
comparable claim in ground ten of the Rule 3.850 motion.  Ex. R at
24-25.  The trial court denied this claim.  Ex. P at 24-25.

Petitioner urges this Court to find his counsel performed
ineffectively.  In the supporting facts of this ground, Petitioner
provides:

> During cross-examination of officer Muse
> about his observation while approaching the
> burglarized residence counsel allowed
> assistant defense attorney to impeach Muse.
> Officer Muse was asked, "During his approach
> of the home had he seen defendant with
> anything officer Muse Stated: He saw the
> Defendant with something that looked like a
> dark colored bag.

Petition at 13.

At trial, on direct, Officer Muse testified that as he
approached the address, he saw a black male with a dark colored
bag.  Ex. B at 31-32.  Officer Muse said the black male set the bag
down, looked over at Officer Muse, and the black male began walking
west to the neighbor's house, walking away from the victim's
residence.  <u>Id</u>. at 32.  Officer Muse described the bag as being
dark colored.  <u>Id</u>.  When asked questions concerning Petitioner's
location when Officer Muse first saw Petitioner, Officer Muse

explained that he did see Petitioner at the neighbor's porch area, but it was right after Officer Muse saw Petitioner in the victim's yard. <u>Id</u>. at 33. Officer Muse said he did not see anybody else in Ms. Kendall's yard. <u>Id</u>. at 35.

Officer Upton testified that when he arrived at the scene, there was a black bag on the sidewalk leading up to the front porch of the victim's house. <u>Id</u>. at 66. The victim, Bridgette Annette Kunsch (formerly Kendall), testified that when she arrived at her house, her husband's black tool bag, with some of their items in it, was outside of the house. <u>Id</u>. at 92.

Ms. Synovia Lance, co-counsel, cross examined Officer Muse. Ex. B at 36. On re-cross examination, Ms. Lance asked pointed questions about Officer Muse's deposition testimony. <u>Id</u>. at 47. Officer Muse explained:

> Well, actually, how it happened I
> remembered later, and I believe it will show
> in the deposition transcript that later I
> remembered him having a bag and setting the
> bag down and I stated that.

<u>Id</u>.

Ms. Lance asked Officer Muse several questions about whether he remembered where Petitioner dropped the bag. <u>Id</u>. at 40. Officer Muse said he could not give an exact location, but he could provide an approximate area. <u>Id</u>. Officer Muse admitted he could not give an exact location where Petitioner was standing when the officer first saw Petitioner. <u>Id</u>. at 41. On re-direct, Officer Muse said Petitioner was standing in the victim's yard, between the

residence and a gravel driveway that separates the duplex next door. <u>Id</u>. at 42. Officer Muse's testimony placed Petitioner on the "east side in her [the victim's] yard of that driveway that belongs to that victim's yard." <u>Id</u>.

In denying Petitioner's tenth ground, the trial court held:

> The record demonstrates that Officer Muse testified that when he received the BOLO call at the residence, and when he approached the address, he "noticed a black male . . . with a dark color [sic] bag. He was setting the bag down. He looked over at me and began walking west to the neighbor's house." (ex. D, pp 30-46). The record does not show any discrepancy as Defendant claims; moreover, Defendant contends that because Officer Muse did not testify as [to] the exact color of the bag (black, gray or light blue), his counsel was ineffective for failing to impeach him on that issue. Defendant fails to show both prongs under <u>Strickland</u>; first, Defendant fails to demonstrate how counsel's performance fell outside the wide range of professional assistance, as Defendant fails to explain how counsel should have impeached the officer. Moreover, this Court finds there is no relevant discrepancy between a dark colored bag and a black, gray or light blue bag, especially in light of the evidence presented against Defendant. (Ex. D, pp. 30-114). As such, Ground Ten is denied.

Ex. P at 24-25. The 1st DCA affirmed the decision of the trial court. Ex. S.

Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the claims of ineffective assistance of trial counsel. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. As such, Petitioner's is not entitled to habeas relief.

- 27 -

Given due consideration, the Florida court's decision is not inconsistent with Supreme Court precedent.  The state court's adjudication is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

In the alternative, the Court finds Petitioner is not entitled to relief on this ground.  Defense counsel's performance was not deficient for allowing co-counsel to conduct the cross examination of Officer Muse.  On cross examination, Officer Muse admitted that, during his deposition testimony, he did not immediately remember Petitioner having a bag when he first saw him, but later on, he clarified his response and stated he saw Petitioner setting a bag down.  On cross examination, Officer Muse also admitted that he could not give an exact location as to where Petitioner was standing when the officer first saw Petitioner.  Defense counsel's failure to impeach Officer Muse's testimony concerning the color of the bag does not amount to deficient performance.  Officer Muse did not testify to a particular color on direct and simply stated it was a dark colored bag.

Petitioner is not entitled to relief on this ground as he has not shown deficient performance.  The cross examination was well within the scope of permissible performance.  "The standard for effective assistance is reasonableness, not perfection." <u>Brewster v. Hetzel</u>, 2019 WL 272835, at *10 (citations omitted).  Petitioner has failed to establish that no competent counsel would have conducted the cross examination as co-counsel did in this trial.

In light of Petitioner's failure to demonstrate deficient performance, this Court need not address the prejudice prong.  <u>Id</u>. at *6 (citation omitted).

## F. Ground Eleven

In his eleventh ground, Petitioner claims he received the ineffective assistance of counsel for failure to ask for a continuance.  Petition at 15.  More particularly, Petitioner contends Jason Snyder was ineffective for failing to ask for a continuance to prepare for trial.  <u>Id</u>.

The record shows two Assistant Public Defenders represented Petitioner:  Jason Snyder and Synovia Lance.  Ex. B at 2; Ex. A at 110, 147.  They both represented Petitioner at trial.  Ex. B at 2. Prior to trial, Synovia Lance filed a Motion for Continuance, asking the trial court to grant a continuance of the trial because depositions had not been completed.  Ex. A at 18.  At a proceeding on January 25, 2010, Petitioner complained to the court that Mr. Snyder had not provided Petitioner with the transcripts.  <u>Id</u>. at 149.  Petitioner advised the court he did not feel ready to go to trial without the transcripts, although Mr. Snyder said he was ready for trial.  <u>Id</u>.

Upon the court's inquiry, Mr. Snyder stated all discovery had been completed.  <u>Id</u>. at 151.  The transcripts had been requested, but were not completed.  <u>Id</u>. at 151-52.  He said he had not reviewed the transcripts with his client because they were not yet available.  <u>Id</u>. at 152.  The court explained to Petitioner that,

- 29 -

due to budget cuts, transcripts are not ordered until the case is going to trial. Id.

Petitioner requested to represent himself, and the court conducted a Faretta inquiry. Id. at 154-163. At the conclusion of the inquiry, Petitioner decided to have Mr. Snyder represent him. Id. at 164. Petitioner complained that he felt like counsel was not doing his job. Id. The court responded: "[w]ell, he can't give you those transcripts until he gets them himself." Id. The court continued the appointment of the public defender and found no ineffectiveness in Mr. Snyder's representation. Id.

The record shows Petitioner had the depositions by January 26, 2010. Ex. B at 5. Petitioner confirmed this fact on the record. Id.

Based on the record, there was no deficient performance of counsel. Co-counsel, Ms. Lance, requested a continuance to complete the depositions. Mr. Snyder requested the transcripts, but he could not provide them to Petitioner prior to January 25, 2010, because they had not been completed. The record shows they were completed and provided to Petitioner by January 26, 2010.

The record also demonstrates defense counsel were prepared for trial and there was no additional need for a continuance as discovery had been completed and depositions taken. Finally, the record shows the transcripts were completed and provided to Petitioner as soon as they were available. Ex. B at 5.

A defendant is not guaranteed perfect representation, only a reasonably competent attorney. <u>Brewster v. Hetzel</u>, 2019 WL 272835, at *10 (citation omitted). Here, defense counsel was working within budget constraints and awaiting the transcriptions of the depositions. All discovery had been completed; therefore, there was no need to seek a continuance. Defense counsel is not expected to file meritless motions, without legal justification. <u>Id</u>. (citing <u>Meders</u>, 900 F.3d at 1349; <u>Pinkney v. Sec'y, DOC</u>, 876 F.3d 1290, 1297 (11th Cir. 2017)).

As Petitioner failed to satisfy the first prong of <u>Strickland</u>, this Court need not address the second prong. Petitioner is not entitled to habeas relief on this ground.

In the alternative, the state court's decision is entitled to AEDPA deference. An explanation follows. Petitioner raised his claim of ineffective assistance of counsel in ground eleven of his supplement to the Rule 3.850 motion. Ex. P at 3-5. The trial court soundly rejected this claim on its merits:

> The record refutes this claim, as Defendant testified and presented his defense. (Ex. D, 123-143). Moreover, Defendant fails to explain what additional evidence or witnesses his attorney could have presented at trial. As such, this Court finds Defendant fails to meet the two-prong test under <u>Strickland</u> and denies Ground Eleven.

<u>Id</u>. at 25.

Upon review, the record shows defense counsel was prepared for trial. He presented the theory of the case to the jury in opening

statement.  Petitioner took the stand and testified, offering his explanation for having the victim's property on his person and offering his explanation for being in the vicinity of the victim's house.  As such, Petitioner's counsel's performance was not below reasonably competent assistance for failing to seek a continuance right before trial.  Moreover, Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u>.  There is no reasonable probability that, but for this alleged deficiency of counsel, the result of the proceeding would have been different.

Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion.  The state has not attempted to rebut this presumption.  Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

Given due consideration, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.  As such, ground eleven is due to be denied.

### G.  Ground Twelve

In his twelfth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to object to Officer Muse's testimony regarding his observations during the chase. Petition at 16.  In the supporting facts to this claim, Petitioner

references Officer's Muse's testimony concerning his observations that as Petitioner ran from the scene, he removed his shirt.  Id.

Generally, Petitioner complains about discrepancies between Officer Muse's deposition testimony and his trial testimony. Petitioner asserts that his counsel should have been prepared to address these inconsistencies and challenge Muse's trial testimony by objecting to it.  Petitioner raised this claim in the supplement to his Rule 3.850 motion as ground twelve.  Ex. P at 6-7.

In his post conviction motion, Petitioner focused on the discrepancy between Officer Muse's deposition testimony and trial testimony, noting that Officer Muse originally stated in his deposition testimony that Petitioner ran towards the back of a church and began taking his clothes off, whereas at trial he said something different.  He contends this crucial trial testimony "was outside the scope of evidence" and counsel should have objected. Id. at 7.

The record shows the following occurred at trial.  Officer Muse testified: "[a]s he [Petitioner] was running, he removed his shirt.  He went into a wooded area, and at that time before he actually got into the wooded lot, he took his shirt off."  Ex. B at 33.  Officer Muse did not mention a church in his trial testimony.

The arrest and booking report, authored by Officer B. K. Alwin, simply states that Officer Muse saw Petitioner remove his white t-shirt during the chase.  Ex. A at 2.  No mention is made of woods or a church.

At trial, Officer Muse testified he watched Petitioner take off running towards a wooded lot. Ex. B at 33. Officer Muse was putting the information over the radio for the other officers in the area. Id. Officer Muse attested, "at that time before [Petitioner] actually got into the wooded lot, he took his shirt off." Id. Officer Muse made no mention of a church. At this point, responding officers set up a perimeter, and Officer Alwin testified, at his position at Alpha Avenue and Comanche Street, he observed a black male riding a bicycle with blue jeans and no shirt, riding south, being chased by two police officers. Id. at 52-53.

The trial court rejected Petitioner's claim as being without merit because Officer Muse's testimony was admissible testimony concerning flight, and any objection to the testimony would have been fruitless. Ex. P at 25-26. Thus, the court concluded that counsel's performance was not outside of the wide range of reasonable professional assistance. Id. at 26.

The trial court denied this claim of ineffective assistance of counsel. The 1st DCA affirmed the decision of the trial court. Ex. S. The Court assumes the 1st DCA adopted the reasoning of the trial court. This presumption has not been rebutted.

There is a qualifying state court decision and AEDPA deference is warranted. The adjudication of the state court, the 1st DCA, resulted in a decision that involved a reasonable application of

clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground twelve because the state court's decision was not contrary to clearly established federal law, Strickland and its progeny, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Ground twelve is due to be denied.

Alternatively, Petitioner's counsel's performance was not deficient for failing to object to Officer Muse's testimony concerning his observations during the chase. The minor discrepancy between the deposition and trial testimony is insignificant and inconsequential, and Muse's testimony concerning Petitioner's flight from the scene was certainly admissible:

> When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance.

Straight v. State, 397 So.2d 903, 908 (Fla. 1981) (per curiam) (citations omitted), cert. denied, 454 U.S. 1022 (1981).

Moreover, Petitioner has suffered no prejudice by this alleged deficiency of counsel. There is no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. As noted by the trial court, an objection by defense counsel to this testimony would have been

- 35 -

fruitless.  Failing to satisfy either the performance or prejudice prongs of Strickland, Petitioner is not entitled to habeas relief on ground twelve.

## H.  Ground Thirteen

In his thirteenth ground for relief, Petitioner raises a claim of the ineffective assistance of counsel for failure to impeach Officer's Muse's testimony about the bag.  Petition at 17.  In particular, Petitioner points to Officer Muse's testimony on re-cross examination that he saw something that looked like a dark colored bag.  Id.  The trial record shows defense counsel did cross examine Officer Muse about his testimony concerning the bag.  Ex. B at 47.

Petitioner raised this claim in ground thirteen of his supplement to his Rule 3.850 motion.  Ex. P at 8-9.  The trial court found this claim to be refuted by the record and denied relief.  Id. at 26.  The 1st DCA affirmed.  Ex. S.

As Petitioner failed to satisfy the performance prong of Strickland, the Court need not reach the prejudice prong.  The trial court denied relief.  Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion.  This presumption has not been rebutted.  Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.  The decision is not inconsistent with Supreme Court precedent.  The state court's

adjudication of this claim is not contrary to or an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief based on this claim.  Thus, ground thirteen is due to be denied.

## I.  Ground Fourteen

In his fourteenth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to present argument as to why Officer Muse failed to write a police report.  Petition at 18.  Petitioner opined in the supplement to his Rule 3.850 motion that as the responding officer, Officer Muse should have filed the police report and not left the report writing to a rookie officer.  Ex. P at 10.

The record shows Officer Alwin wrote the police report.  Ex. A at 2-3.  Officer Alwin testified that he began working with the Jacksonville Sheriff's Office on June 2, 2008.  Ex. B at 50.  The offense occurred on April 4, 2009.  Id. at 51.  Officer Alwin took Petitioner into custody.  Id. at 53.  Officer Alwin searched Petitioner.  Id.  He found items taken from the victim's house on Petitioner's person.  Id. at 54.  Petitioner was placed in a patrol car.  Id.  Petitioner spontaneously told Officer Alwin that he wanted to apologize to the owner.  Id.  Officer Alwin gave Petitioner his Miranda warnings.  Id.  As to report writing,

Officer Alwin testified that he writes about five reports per week in the course of his duties. _Id_. at 57.

Officer Chris Upton testified that he was the field training officer on that date. _Id_. at 62. He testified Officer Alwin was a recruit. _Id_. at 62-63. Officer Upton testified Petitioner was detained and officers located the victim's items in Petitioner's pants. _Id_. at 64-65. On cross examination, Officer Upton testified he was responsible for reviewing Officer Alwin's report. _Id_. at 73. Officer Upton said he would be listed as a reporting officer on that day and would have reviewed the report for accuracy. _Id_. at 76, 78.

Petitioner exhausted this ground in the state court system by presenting it to the trial court as ground fourteen of the supplement to the Rule 3.850 motion. Ex. P at 10-11. The trial court denied this claim, _id_. at 26-27, and the 1st DCA affirmed. Ex. S.

The trial court found no legal requirement that Officer Muse write a report simply because he was the first officer to respond to the scene. Ex. P at 27. Petitioner has not submitted any evidence showing the first officer to respond to a scene must file a report. Here, both Officers Alwin and Upton took responsibility for the report. They both played a role in arresting Petitioner, Officer Alwin wrote the report, and Officer Upton took

responsibility as a reporting officer and the officer charged with the duty of reviewing the report for accuracy.

Again, defense counsel's performance cannot be deemed deficient for failure to raise meritless or unsupported arguments or motions. Here, any objection or motion concerning the failure of Officer Muse to file a report as the first officer on the scene would have been futile. In this regard, defense counsel's performance was not outside the wide range of professionally competent assistance. Petitioner is not entitled to habeas relief on ground fourteen.

Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. As such, ground fourteen is due to be denied.

### J. Ground Fifteen

In his fifteenth ground, Petitioner raises a claim of ineffective assistance of counsel based on counsel's failure to ask Officer Alwin about the bag. Petition at 18. Based on the trial record, Officer Alwin was stationed at a perimeter, not at the victim's house. Ex. B at 52. On direct examination, he testified

that when he got to the residence, he noticed the front door was open and there was a black bag filled with electronics and other items in front of the house. <u>Id</u>. at 56. He said the bag was close to the front porch, in the front yard. <u>Id</u>. Officer Upton testified, when he first got to the house, he observed a black bag filled with some items, and the bag was sitting on the sidewalk leading up to the front of the screened-in area. <u>Id</u>. at 66.

On cross examination of Officer Upton, defense counsel attempted to raise the issue that there was no mention of Officer Muse seeing a bag when he initially saw Petitioner. <u>Id</u>. at 78. Officer Upton said: "[i]f it is not in the report, then there had been no mention." <u>Id</u>. When defense counsel attempted to impeach Officer Upton's testimony concerning whether Officer Muse ever mentioned he observed a bag, the state made a hearsay objection, and the court sustained the objection. <u>Id</u>. at 79-83.

The trial court rejected Petitioner's contention that defense counsel should have asked Officer Alwin about what a witness said about moving the bag to the victim's home. The court found defense counsel attempted to impeach the testimony concerning the bag, but the court sustained the state's objections.

Petitioner exhausted this ground by raising it in the supplement to his Rule 3.850 motion. Ex. P at 12-13. The trial court denied this claim. <u>Id</u>. at 27. The 1st DCA per curiam affirmed. Ex. S.

Petitioner's counsel's performance was not deficient for failing to ask Officer Alwin about the bag. Officer Alwin testified he saw the bag in the front of the house close to the front porch. The absence of any testimony concerning the bag being moved by another individual did not render counsel's performance deficient.[6] Moreover, there is no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

The state court's decision is entitled to AEDPA deference as there is a qualifying state court decision. Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the second Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. S. The Florida court's decision is not inconsistent with Supreme Court precedent. The state court's adjudication of this claim is not contrary to or an unreasonable application of Supreme

---

[6] Generally, the record demonstrates defense counsel did not want any testimony on the hearsay statements or gestures of Sedrick Knight admitted into evidence. Ex. B at 5-7. Defense counsel argued she would not be able to cross examine this unavailable witness. <u>Id</u>. at 6. The state told the court: "Mr. Knight is not mentally with us." <u>Id</u>. The arrest report mentions Mr. Knight told Officer Alwin he returned the bag to the front of Ms. Kendall's house. Ex. A at 2. Again, there would have been no opportunity for cross examination of this unavailable witness, Mr. Knight. Defense counsel's performance was not rendered deficient by any failure to pursue this line of questioning in the absence of the witness Mr. Knight.

Court law, or based on an unreasonable determination of the facts. As such, ground fifteen, is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[7] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of February, 2019.



_____
BRIAN J. DAVIS
United States District Judge



sa 1/29
c:
Rodrickas A. Allen
Counsel of Record